Argued and submitted May 21, 1984, reversed and remanded June 5, reconsideration
denied August 2, petition for review allowed September 24, 1984 (300 Or 111)
See later issue Oregon Reports

CAIN,
*Appellant,*

*v.*

RIJKEN et al,
*Defendants,*

*and*

SISTERS OF PROVIDENCE, dba
Providence Medical Center,
*Respondent.*

(A8102-00699; CA A29835)

700 P2d 1061

Larry W. Stuber, Corvallis, argued the cause for appellant. With him on the briefs was Ringo, Walton & Eves, P.C., Corvallis.

Paul R. Duden, Portland, argued the cause for respondent. With him on the brief were Eric J. Neiman, and Tooze Kerr Marshall & Shenker, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This is a wrongful death claim brought by the personal representative of the decedent, who was killed in an auto accident involving defendant Paul Rijken.[1] At that time, Rijken was on conditional release to the Day Treatment Program of defendant Providence Medical Center (Providence) from the Psychiatric Security Review Board (PSRB). Summary judgment was granted to Providence. Neither party argued that there were material issues of fact to be resolved. The only issue before the trial court was the legal one of whether or not Providence owed a duty to plaintiff.[2]

■ The parties ask this court to consider for the first time whether a third party who is injured by a psychotherapist's patient has a cause of action against the therapist.[3] Both parties acknowledge that Oregon follows the general rule that "[t]here is no duty to aid one in peril in the absence of some special relation between the parties which affords a justification for the creation of a duty." *Cramer v. Mengerhausen,* 275 Or 223, 227, 550 P2d 740 (1976). Plaintiff argues that the psychotherapist-patient relationship[4] is a

---

[1] Defendant State of Oregon settled with plaintiff before trial, and Rijken did not appear at trial. Neither is involved in this appeal.

[2] In its answer, Providence asserted affirmative defenses that it was acting as an agent of a public body and that it was immune from liability because its actions were discretionary. These arguments were not made on Providence's motion for summary judgment or on appeal but it may, of course, be presented on remand.

[3] Other jurisdictions have recognized such a duty. The seminal case is *Tarasoff v. Regents of University of California,* 15 Cal 3d 425, 131 Cal Rptr 14, 551 P2d 334 (1976). *See also Semler v. Psychiatric Institute of Washington, D.C.,* 538 F2d 121 (4th Cir 1976), *cert den* 429 US 827 (1976); *Lipari v. Sears, Roebuck & Co.,* 497 F Supp 185 (D Neb 1980); *Petersen v. State,* 100 Wash 2d 421, 671 P2d 230 (Wash 1983).

[4] Plaintiff cites Restatement (Second) Torts § 315(a), which provides:

"There is no duty so to control the conduct of a third person as to prevent him from causing bodily harm to another unless

"(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct * * *[.]"

Oregon courts have not adopted the Restatement position. The section was cited in *Christensen v. Epley,* 36 Or App 535, 585 P2d 416 (1978), *affirmed by an equally divided court* 287 Or 539, 601 P2d 1216 (1979), which was a wrongful death action brought after a police officer was stabbed when one Thompson tried to help an inmate of a corrections center to escape. The plaintiff personal representative sued the matron on duty at the center, who had allegedly permitted Thompson to enter the center. This court found a special relationship between the custodian and the prisoner that implied a duty to prevent the escape of an inmate. The Supreme Court did not agree as to what

special one that imposes a duty on the therapist to act to prevent harm to third parties. Providence, on the other hand, argues that the special relationship exception to the general rule does not encompass a noncustodial situation such as existed here.

 The issue before us is not, however, the question of what duty arises because of a voluntary psychotherapist-patient relationship. The relationship between Rijken and Providence here existed because of the commitment by PSRB of Rijken to mental health treatment. Duty is an expression of the total policy considerations which lead to the conclusion that the particular plaintiff is entitled to protection, *Mezyk v. National Repossessions*, 241 Or 333, 336, 405 P2d 840 (1965), but the policy considerations which would define the duty of a psychotherapist in a voluntary treatment situation are not those which arise from a relationship circumscribed by the conditional release statute. ORS 161.336.

Before releasing a person, PSRB must have as its primary concern the "protection of society." ORS 161.336(10). Supervision is required when there is a medical probability that the disease may "become active and, when active, render the person a danger to others." ORS 161.336(3). Conditions of release may be prescribed by PSRB, and the treating facility must comply. ORS 161.336(4)(e). The director of the treating facility or any person responsible for the supervision of the person

"may take a person on conditional release into custody or request that the person be taken into custody if there is reasonable cause to believe the person is a substantial danger to others because of mental disease or defect and that the person is in need of immediate care, custody or treatment." ORS 161.336(6).

 Under the conditional release provisions, the public is to be protected from the consequences of mental disorders which are expected to be active from time to time. By assuming the obligation as the treating facility for Rijken,

constitutes a "special relationship" within the meaning of section 315. Judge Tongue, concurring, found such a relationship between a jailer and a police officer who might be expected to try to prevent an escape. Judge Peterson, concurring in part and dissenting in part, found no duty to control the conduct of a criminal actor, in the absence of a custodial relationship.

Providence became authorized to take Rijken into custody or to cause him to be taken into custody, under appropriate circumstances. By virtue of that authority, Providence assumed a concomitant duty to use reasonable care to exercise that authority to control the recognized dangerous propensities of the patient. This does not mean that any person injured by a patient may have a claim against the treating facility. The principle remains that

> " 'liability is confined to harms actually resulting that are of the general kind to be anticipated from the conduct and, for the same reason, liability is confined to situations in which the person harmed is one of the general class threatened.' " *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 608, 469 P2d 783 (1970), quoting from 1 Harper & James, The Law of Torts, Introductory p. xl (1956).

■ ■ Whether the scope of Providence's duty to act to prevent injury extends to plaintiff here, who was not identifiable as a specific likely victim, is a question that Oregon courts have generally treated as one governed by whether there was a foreseeable risk of harm to a member of the class in which the victim was included. *See Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 560, 652 P2d 318 (1982). In the situation before us, if Providence had knowledge of Rijken's illness, past actions and condition at the time of the injury, it would have notice that reckless driving could be a foreseeable consequence of Rijken's disease. Plaintiff was a member of a general class—those on the streets or highways—whom Rijken could potentially harm and who thereby would be within the scope of the duty owed by Providence to act reasonably so as to prevent that harm. The question of foreseeability was sufficient to withstand a motion for summary judgment.[5]

Providence's memorandum and exhibits submitted with its motion for summary judgment show that on April 20, 1978, Rijken violated traffic and criminal laws and was charged with, among other violations, recklessly endangering, criminal mischief, failing to remain at the scene of an accident

---

[5] Providence's motion for summary judgment was filed after plaintiff's second amended complaint. Plaintiff's memorandum in opposition was filed after plaintiff had filed a fourth amended complaint adding several specifications of negligence. Providence did not amend or supplement its original motion.

and attempting to elude. He was found not responsible by reason of mental disease or defect and was committed to the jurisdiction of PSRB. He was then committed to the state hospital. In December, 1978, he was placed on conditional release to live with his parents in California. In May, 1980, PSRB ordered a new conditional release plan, returning him to Portland and enrolling him in psychiatric day treatment at Providence. He was obliged to attend clinical sessions and to take prescribed medicine. He was reinstitutionalized at the state hospital for two months in 1980. His last contact with Providence was on December 31, 1980. He missed his next scheduled appointment on January 2, 1981, and on January 4, he was involved in the fatal accident.

Plaintiff's opposing memorandum and exhibits, not disputed by Providence, additionally state that Rijken's criminal violations stemmed from a high speed chase in which two cars were hit and severely damaged and several others were forced off the road. At one point he drove his car into the lanes of oncoming traffic at speeds of up to 85 miles per hour. When he was committed by PSRB to the care of Providence, the treating therapists were required to provide PSRB with reports and to notify PSRB of violations of the terms of the release. Providence was aware of Rijken's history, and its staff diagnosed him as being schizophrenic, schizo-affective type, characterized by periods of manic activity, poor judgment and hallucinations. On December 26, 1980, he admitted himself to Providence's Residential Treatment Program, because he could not cope with the outside world. He was released on December 30, 1980. During the early morning on December 30, Rijken reported to Providence that he was experiencing auditory hallucinations. He was requested by Providence to see his therapist later that morning but failed to do so. In the late afternoon of December 31, 1980, he met with a therapist, who told him to keep a low profile on the New Year's holiday. He then missed his January 2 appointment.

In *Christensen v. Epley, supra* n 4, 287 Or at 565, Judge Tongue, concurring, reviewed Oregon cases in which, under somewhat extreme facts, the court has held the question of foreseeability to be sufficiently presented to avoid dismissal. He concluded:

"It is also important to note, in considering the past

decisions by this court, that a clear distinction has been made between cases in which the sufficiency of the evidence to go to the jury is raised after trial on a motion for directed verdict or for a judgment n.o.v. and cases in which the sufficiency of the allegations of the complaint is raised by demurrer, as in this case."

In the summary judgment process, it was shown that Providence knew that an earlier psychotic episode had resulted in Rijken's driving recklessly and that Rijken's symptoms shortly before he caused plaintiff's decedent's death indicated that his disease had become or was becoming active, rendering him thereby potentially dangerous to those of the class of which plaintiff was a member. We cannot say as a matter of law that the resulting accident was so unforeseeable that the community would not hold Providence responsible for its actions or failure to act. *See Stewart v. Jefferson Plywood Co., supra,* 255 Or at 609. It was error to grant Providence's motion for summary judgment.

Reversed and remanded.